**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ON Semiconductor Corporation, et al., | No. CV-16-01055-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Micro Processing Technology Incorporated, | |
| Defendant. | |

Plaintiffs are ON Semiconductor Corporation and Semiconductor Components Industries, LLC (ON). Defendant is Micro Processing Technology Incorporated (MPT). At issue is MPT's Motion to Dismiss ON's Amended Complaint or, in the Alternative, to Transfer Venue. (Doc. 14.) The motion is fully briefed, and the Court heard oral on December 15, 2016. The Court also has considered the parties' supplemental briefs regarding whether a party can waive a forum selection clause through litigation-related conduct. (Docs. 46-47.) For the following reasons, MPT's motion to transfer venue is granted and this matter is transferred to the Middle District of Florida.

## BACKGROUND

This case presents, *inter alia*, a dispute over the inventorship of three patents (Patents-in-Suit). The Patents-in-Suit also are implicated in a separate case brought by Plasma-Therm, LLC against MPT in the Middle District of Florida, *Plasma-Therm LLC v. Micro Processing Technology, Inc.*, No. 8:15-cv-02785-CEH-TBM (Florida

Litigation).  For context, the Court will discuss each case before reaching the merits of MPT's motion.

**I. Allegations in the Amended Complaint**[1]

ON manufactures integrated circuits, which are used in a variety of electronic applications and generally consist of a "chip" connected by wires to a number of "pins" and encapsulated in a plastic case.  These chips are manufactured in bulk on large platters called "wafers," which typically consist of a semiconductor substrate material atop a metal backing.  A single wafer can contain thousands of chips that must be separated carefully from each other through a process called "singulation," which involves sawing through the portion of the wafer between each chip.  It can take up to ten hours to singulate a wafer because the space between each chip is small and the cuts must be precise to avoid damage.

Prior to 2008, ON developed and patented a plasma etching technique (Plasma Singulation) to replace the sawing process.  Though Plasma Singulation significantly reduces the time it takes to singulate a wafer, it does not remove the wafer's metal backing.  To solve this problem, ON and MPT entered into a three-year Confidentiality and Non-Disclosure Agreement (NDA), and began experimenting with different methods to separate the metal backing.  One such method involved cutting the metal backing using a tool similar to a pizza cutter (Mechanical Cutting-Based Singulation).  Another involved applying stress to the wafer using a stylus (Stylus-Based Singulation).

In February 2012, ON employee Gordon Grivna conceived of the idea to use a uniform pressure differential-based stress on the wafer, which involves fracturing the metal backing between each chip by applying high pressure on one side of the wafer instead of cutting through the metal backing (Uniform Pressure Differential-Based Singulation).  Between March and June 2012, Grivna tested and refined this method.

In May 2012, P.C. Lindsey of MPT visited Grivna and other ON employees to

---

[1] The following information is taken from the Amended Complaint, (Doc. 13), and accepted as true for purposes of this order.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

discuss the latest singulation results.   During that visit, Grivna's Uniform Pressure Differential-Based Singulation experiments were openly visible.   In the months that followed, Grivna shared with Mr. Lindsey and MPT confidential information regarding some of the methods he was exploring, including Stylus-Based and Uniform Pressure Differential-Based Singulation.   In August 2013, the parties entered into a second, identical NDA to allow them to continue their joint work.

ON alleges that, between 2011 and 2013, MPT surreptitiously patented singulation methods first conceived of by ON employees.   Specifically, on August 2, 2011, MPT filed a patent application, which issued as U.S. Patent No. 8,450,188 (188 Patent), claiming ownership and inventorship of, among other things, Mechanical Cutting-Based Singulation.   On January 16, 2013, MPT filed another patent application, which issued as U.S. Patent No. 9,153,493 (493 Patent), claiming ownership and inventorship of, among other things, Stylus-Based Singulation.   Finally, on September 12, 2013, MPT filed a provisional patent application, which issued as U.S. Patent No. 8,906,745 (745 Patent), claiming ownership and inventorship of, among other things, Uniform Pressure Differential-Based Singulation.  The 188 and 493 Patents list Lindsey as the sole inventor and the 745 Patent lists Lindsey and a fellow MPT employee, Darrell Foote, as the sole inventors.

On November 9, 2015, ON received a letter from MPT asserting that it conceived of and owned the "idea of applying pressure to the tape across the entire wafer simultaneously," and that ON's work to develop back-metal processing technology violated the NDA.  ON responded that MPT had not shared any confidential information with it, but that ON had been working on its own technology since early 2012 and had shared its confidential information with MPT.   In a subsequent letter, MPT referred for the first time to its patented process to utilize uniform pressure across the entire wafer, alleged that ON's work with a third-party potentially infringed on MPT's patent, and demanded that ON cease and desist its use of MPT's patents and trade secrets.[2]

_____

[2] Though not expressly alleged, it appears that this third-party is Plasma-Therm.

1   Upon reviewing MPT's patents, ON learned that they covered technology
2   invented in whole or in part by ON, and that MPT had disclosed confidential information
3   covered by the parties' NDAs in its patent applications.  Consequently, in April 2016 ON
4   initiated this action asserting seven claims to relief.  Counts I-III seek to correct the
5   inventorship of the three patents to name Grivna as joint inventor, Counts IV-VI allege
6   that MPT breached the parties' NDAs by disclosing confidential information in the
7   applications for the Patents-in-Suit, and Count VII alleges that MPT misappropriated
8   ON's trade secrets through the same disclosures.

9   **II.  The Florida Litigation**[3]

10   In December 2015, several months before ON initiated this lawsuit, Plasma-Therm
11   brought suit against MPT in the Middle District of Florida.  According to its First
12   Amended Complaint, (Doc. 40), Plasma-Therm manufactures etching and thin film
13   deposition equipment for the semiconductor industry and has developed and patented a
14   plasma-dicing method of singulation and methods for separating the metal backing on a
15   semiconductor substrate.  Plasma-Therm and MPT entered into a NDA in June 2011,
16   under which they shared certain information related to back-metal processing methods.
17   Ultimately, however, the parties did not enter any further business transactions related to
18   the technology.

19   In November 2015, MPT sent a letter to Plasma-Therm demanding that it cease
20   and desist its infringement of MPT's patents and misappropriation of MPT's trade
21   secrets.  Plasma-Therm brought suit seeking a declaratory judgment of non-infringement
22   as to the Patents-in-Suit.  Plasma-Therm also sought a declaratory judgment that the
23   Patents-in-Suit are unenforceable because MPT failed to name Grivna as a joint inventor.
24   On June 30, 2016, however, Plasma-Therm voluntarily dismissed its unenforceability
25   claims without prejudice.  (Doc. 49.)

26   _____

27   [3] The following information is taken from the docket in the Florida Litigation,
which the Court may judicially notice.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
28   442 F.3d 741, 746 (9th Cir. 2006).  Record citations in this subsection refer to entries on
the Florida Litigation docket.

1    On January 18, 2017, MPT filed counterclaims against Plasma-Therm for, among

2    other things, patent infringement and misappropriation of trade secrets.   MPT also

3    brought a third-party counterclaim against ON, alleging, in relevant part, that ON

4    breached a License Agreement entered into by the parties in August 2014 and contributed

5    to or induced Plasma-Therm to infringe on the Patents-in-Suit.   Grivna is named as a

6    third-party counter-defendant in the Florida Litigation.  (Doc. 85.)

7    **III.  MPT's Motion**

8    MPT moves to dismiss this case pursuant to Federal Rule of Civil Procedure

9    12(b)(7), arguing that Grivna is a necessary and indispensable party that ON has failed to

10   join.  (Doc. 14.)  Alternatively, MPT moves the Court, pursuant to 28 U.S.C. § 1404(a),

11   to transfer this case either to the Northern District of California or to the Middle District

12   of Florida.  During oral argument, however, MPT modified its position and requested that

13   the Court decide first whether a transfer of venue is appropriate and, if so, to reserve the

14   Rule 12(b)(7) question for the transferee court to decide.  (Doc. 48 at 8-9.)  MPT also

15   argued that the Middle District of Florida is the most appropriate forum in light of the

16   related litigation there concerning the Patents-in-Suit.  Because the Court finds that a

17   transfer of venue to the Middle District of Florida is appropriate, it will oblige MPT's

18   request and reserve judgment on the Rule 12(b)(7) question.[4]

19   **LEGAL STANDARD**

20   For the convenience of the parties and witnesses, and in the interests of justice, 28

21   U.S.C. § 1404(a) allows a district court to transfer a civil action to any district in which

22

23   [4] The Rule 12(b)(7) question seems avoidable.  In arguing that Grivna is not a
24   necessary and indispensable party, ON relies entirely on information not included in the
     Amended Complaint.  It appears that the parties nearly reached an agreement by which
25   ON would file a second amended complaint that includes this information and MPT
     would withdraw its Rule 12(b)(7) motion.  The agreement evidently fell apart because
26   MPT would not agree to waive its right to re-assert the necessity of Grivna's joinder if
     deemed necessary by subsequent factual developments.  (Doc. 26-1.)  Though the Court
27   does not decide the Rule 12(b)(7) question here, it nonetheless notes that the allegations
     in ON's Amended Complaint do not support its position on the issue.  If the extrinsic
28   information supplied by ON in its response brief is necessary to show that Grivna is not a
     necessary and indispensable party, ON should include such information in the operative
     complaint.

- 5 -

the case originally could have been brought.  Section 1404(a) therefore requires the Court to make two findings:  (1) the transferee court is one in which the case could have been brought and (2) the convenience of the parties and witnesses and the interests of justice favor transfer.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).  The movant bears the burden of showing that a transfer is warranted.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

## DISCUSSION

### I.  Propriety of Venue in the Middle District of Florida

Pursuant to 28 U.S.C. § 1391(b):

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For venue purposes, a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2).  MPT admits, in relation to this case, that it is subject to personal jurisdiction in the Middle District of Florida.  MPT therefore argues that ON could have brought this action in the Middle District of Florida because MPT resides there for venue purposes.  The Court agrees.  This case could have been brought in the Middle District of Florida because MPT is subject to personal jurisdiction there with respect to this action.

### II.  Convenience

When determining whether the convenience of the parties and witnesses favor a transfer, a court weighs multiple factors, including:

(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). On balance, the Court finds that these factors are neutral.

As to the first factor weighs, several of ON's claims allege that MPT violated the parties' NDAs, which were prepared in Arizona. Though neither party discloses where the NDAs were negotiated and executed, it is reasonable to infer that these activities occurred either in Arizona, where ON is headquartered and where the NDAs were prepared, or in California, where MPT is incorporated and headquartered. The Court finds, however, that this factor is of little importance. Indeed, though the location where the NDAs were negotiated and executed might inform the analysis of other factors—for example, the parties' contacts with the forum and the ease of access to proof—it is not clear what independent significance this factor has that would make Arizona a more convenient forum.

The second factor is neutral. Only one of ON's claims—misappropriation of trade secrets—is governed by Arizona state law. ON's remaining claims for correction of patent inventorship and breach of contract are governed by federal patent law and New York state law, respectively. Although this Court might be more familiar with Arizona law than the Middle District of Florida, there is no reason to believe it is more familiar with federal patent or New York law, which predominate in this case. Moreover, federal courts routinely are tasked with applying the laws of other states. There is no reason to believe the Middle District of Florida is less equipped to apply Arizona law. Nothing about this factor suggests that the Middle District of Florida would be a less convenient forum.

The third factor will almost always weigh against a transfer of venue. ON chose to litigate in Arizona and "[c]ourts do not lightly disturb a plaintiff's choice of forum." *Sidi Spaces LLC v. CGS Premier Inc.*, No. CV16-01670-PHX-DGC, 2016 WL 3654306, at *2 (D. Ariz. July 6, 2016). The very fact that Congress has created a mechanism for transferring venue, however, demonstrates that this factor cannot, alone, carry the day.

The fourth and fifth factors—which pertain to the parties' contacts with the forum, generally and in connection with the specific cause of action—are neutral. It appears that both parties have substantial contacts with Arizona—ON is headquartered here and the parties have worked together in Arizona on the technology at issue. Moreover, the NDAs were prepared by ON in Arizona and the inventions and trade secrets that ON claims MPT misappropriated and incorrectly claimed sole inventorship over allegedly were developed by Grivna in Arizona. MPT, however, has offered evidence that ON's supply chain includes a Florida distributorship, and that ON and Grivna have substantial business dealings in Florida with Plasma-Therm involving similar technology. (Doc. 26 at 11-12.) On balance, these contacts do not weigh heavily for or against a transfer.

Likewise the sixth through eighth factors are relatively neutral. ON contends that it will be more costly for it to litigate this matter in Florida because "[a]ll of ON's documents and its employees and individuals with knowledge underlying the claims are in Arizona," and therefore "[e]very single potential witness would have to be flown out to Florida for trial." (Doc. 21 at 17.) ON also contends that, "to the extent there are non-party witnesses, they likely reside in Arizona or California . . . . Florida would not be able to compel their attendance." (*Id.*) Finally, ON argues that the evidence supporting its claims, including proof that Grivna invented the technology at issue and proof that MPT breached the NDAs, is either in Arizona or California. (*Id.*) If this case were the only matter involving these patents and these parties, the Court might agree. But, as MPT points out, these same patents already are it issue in the earlier-filed Florida Litigation, to which ON and Grivna are now parties. Litigation costs likely would be lower for all parties if both cases are tried together. Moreover, neither party identifies a single witness

1  who could not be produced in Florida.

2       Finally, the presence of a forum selection clause is a significant factor that the

3  Court may consider.  Here, MPT argues that ON's claims relate to a License Agreement

4  entered into by the parties in 2014, and that the License Agreement contains a forum

5  selection clause designating the Northern District of California as the venue in which

6  such disputes must be heard.  MPT contends, however, that ON has waived the forum

7  selection clause by bringing this lawsuit in Arizona, and states that it is willing to waive

8  the forum selection clause if the Court determines that the Middle District of Florida is a

9  more appropriate venue.  On the other hand, ON argues that its claims do not relate to the

10  License Agreement and, therefore, the forum selection clause is not implicated.  If the

11  Court were to adopt either party's position, the result would be the same:  the Court could

12  disregard the forum selection clause and either keep the case or transfer it to the Middle

13  District of Florida.  Neither party seems interested in enforcing this forum selection

14  clause.  The Court therefore finds that the presence of a forum selection clause in a

15  License Agreement that neither party genuinely is seeking to enforce, and which might

16  not be implicated or might have been waived, does not affect the transfer analysis.

17  **III.  Interests of Justice**

18       Importantly, the convenience factors enumerated by the Ninth Circuit are not

19  exhaustive, nor are they relevant to all cases.  Instead, courts have discretion "to

20  adjudicate motions for transfer according to an individualized, case-by-case consideration

21  of convenience and fairness[.]"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23

22  (1988).  In addition to considering the convenience to the parties and witnesses, courts

23  must assess whether the interests of justice would be served by a transfer of venue.  Such

24  is the case here because trying this matter and the Florida Litigation separately will

25  needlessly duplicate judicial resources and present the risk of conflicting results.

26       For example, ON seeks to correct the Patents-in-Suit to name Grivna as a co-

27  inventor.  Such a correction, however, likely would affect ownership of the Patents-in-

28  Suit.  Although "issues of patent ownership are distinct from questions of inventorship,"

the two concepts interrelate.  *Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007).  "An application for a patent must be made by or on behalf of the actual inventor or inventors," *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993), and "[i]t is a bedrock tenet of patent law that an invention presumptively belongs to its creator," *Israel,* 475 F.3d at 1263 (quotations and citation omitted).  Thus, "[a]t the heart of any ownership analysis lies the question of who first invented the subject matter at issue, because the patent right initially vests in the inventor who may then . . . transfer that right to another[.]"  *Beech*, 990 F.2d at 1248.

ON alleges that Grivna is a co-inventor of the patented technologies.  Though not alleged in the complaint, ON asserts in its briefs that Grivna "assigned all right, title and interest in any invention to ON," and consequently "should . . . Grivna be entitled to any rights in any of the patents-in-suit, those rights have already been transferred to ON." (Doc. 21 at 5.)  Thus, if Grivna is found to be a co-inventor of the Patents-in-Suit, then ON, as Grivna's assignee, potentially could assert joint ownership rights over those patents.

Such a result could have meaningful consequences for the Florida Litigation.  If ON is found to be a joint owner of the Patents-in-Suit, it likely must be named as a party to Plasma-Therm's lawsuit, which seeks a determination of non-infringement.  Likewise, a determination that ON jointly owns the Patents-in-Suit likely would have implications for MPT's third-party counterclaims, which accuses ON of inducing or contributing to Plasma-Therm's infringement.  More importantly, however, "[a]n action for infringement must join as plaintiffs all co-owners."  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998).  "[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit."  *Id.* at 1498.  Stated otherwise, a patent co-owner has a substantive right "to impede an infringement suit brought by another co-owner," which "trumps the procedural rule for involuntary joinder under Rule 19(a)."  *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014).  Thus, if ON is found to be a joint owner of the Patents-in-Suit, it could defeat MPT's

infringement counterclaims in the Florida Litigation by refusing to join them.

Additionally, although Plasma-Therm previously dismissed without prejudice its unenforceability claims, MPT anticipates that Plasma-Therm will reassert the issue now that MPT has counterclaimed against Plasma-Therm for patent infringement.  If Plasma-Therm reasserts its challenges to the enforceability of the Patents-in-Suit, then both this Court and the Florida court will be deciding the same inventorship issues.

The inventorship issues raised by ON—and perhaps soon to be reasserted by Plasma-Therm—logically should be resolved before the claims and counterclaims asserted in the Florida Litigation.  One solution might be to stay the Florida Litigation until this Court decides the merits of ON's claims.  This Court, however, cannot order a stay in the Florida Litigation, and the Florida court recently denied a motion to stay brought by MPT, suggesting that it is reluctant to do so.   Under these unique circumstances, the interest of justice in efficiently and consistently resolving cases strongly favors a transfer to the Middle District of Florida.

## CONCLUSION

For the foregoing reasons, the Court finds that this case could have been brought in the Middle District of Florida because MPT is subject to personal jurisdiction there with respect to this matter.  Although MPT has not shown that the Ninth Circuit's enumerated convenience factors weigh substantially in favor a transfer, it has demonstrated that the interests of justice strongly support a transfer to the Middle District of Florida, where this case and the Florida Litigation may be resolved together in a logical order and efficient manner.  Accordingly,

//

//

//

//

//

//

1        **IT IS ORDERED** that Defendant's Motion to Dismiss ON's Amended Complaint

2    or, in the Alternative, to Transfer Venue, (Doc. 14), is **GRANTED IN PART**.  This

3    matter is hereby transferred to the Middle District of Florida.

4        Dated this 8th day of February, 2017.

 

 

 

 

                                          Douglas L. Rayes
                                          United States District Judge